1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8
9

10    MATHEW COLLETT,

11                          Plaintiff,

12          v.

13    KEVIN HASON, et al.,

14                          Defendants.

CASE NO. 3:23-CV-6051-TMC-DWC

REPORT AND RECOMMENDATION

Noting Date: June 23, 2025

15          The District Court has referred this action, filed pursuant to 42 U.S.C. § 1983, to United

16    States Magistrate Judge David W. Christel. Presently before the Court is Defendants Mason

17    County, Kevin Hanson, and Shane Schoeneberg's ("County Defendants") Motion for Summary

18    Judgment (Dkt. 73) and Defendants Diane Houlton and Nurse Bree's ("Nurse Defendants")

19    Motion for Summary Judgment (Dkt. 79).

20          After consideration of the relevant record, the Court finds no genuine issue of material

21    fact remains in this case and Defendants are entitled to judgment as a matter of law. The Court,

22    therefore, recommends County Defendants' Motion for Summary Judgment (Dkt. 73) and Nurse

23    Defendants' Motion for Summary Judgment (Dkt. 76) be granted and this case be closed.

24

REPORT AND RECOMMENDATION - 1

1

## I.    Background

2

Plaintiff, a pretrial detainee at all relevant times, alleges his constitutional rights (both

3

federal and state) were violated when Defendants failed to provide him with adequate medical

4

and dental treatment. Dkt. 16.[1]

5

County Defendants filed their pending Motion for Summary Judgment on April 10, 2025.

6

Dkt. 73, *see also* Dkts. 74-75 (supporting evidence). Nurse Defendants filed their pending

7

Motion for Summary Judgment on April 11, 2025. Dkt. 76. Plaintiff has not filed a response to

8

either Motion for Summary Judgment.[2]

9

## II.    Standard of Review

10

Summary judgment is proper only if the pleadings, discovery, and disclosure materials on

11

file, and any affidavits, show that there is no genuine dispute as to any material fact and that the

12

movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is

13

entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

14

showing on an essential element of a claim in the case on which the nonmoving party has the

15

burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of

16

fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for

17

the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

18

(1986) (nonmoving party must present specific, significant probative evidence, not simply "some

19

20

---

[1] Defendants previously filed a Motion to Dismiss that was granted-in-part and denied-in-part. The only
claims remain are that County Defendants and Nurse Defendants violated Plaintiff's federal and state constitutional
rights. *See* Dkts. 46, 61.

21

22

[2] The record reflects Plaintiff was transferred from Washington Corrections Center to Monroe Correctional
Complex around the time the motions for summary judgment were filed. There is nothing in the record to indicate
Plaintiff was not served with copies of the two motions. Plaintiff also received notice that the Court reset the noting
date of Nurse Defendants' Motion for Summary Judgment. Therefore, the record reflects Plaintiff was on notice of
the Motions for Summary Judgment and failed to respond. Additionally, Plaintiff has not updated his address with
the Court in violation of the Local Civil Rules this Court's Order (Dkt. 70 at 4).

23

24

metaphysical doubt"); *see also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

**III.    Discussion**

In the Motions for Summary Judgment, County Defendants and Nurse Defendants assert summary judgment is appropriate because Plaintiff's claims for injunctive relief are moot and no genuine issue of material fact remains as to Plaintiff's claims that his constitutional rights were violated. Dkts. 73, 76. As the County Defendants and Nurse Defendants rely on the same evidence, the Court will address the Motions for Summary Judgment concurrently.

A.  *Claims for Injunctive Relief*

In the Amended Complaint, Plaintiff seeks injunctive relief. Dkt. 16. Specifically, he requests the Court order Defendants to send him to a dentist or provide him with money to see a dentist, send him to a specific treatment provider for an operation and pain medication, and provide him with a low fiber diet. *Id*. at 14-15. Defendants contend Plaintiff's claims for injunctive relief are moot because Plaintiff is no longer housed at the Mason County Jail ("the Jail"). Dkts. 73, 76.

 "[W]hen a prisoner is moved from a prison, his action will usually become moot as to conditions at that particular facility." *Nelson v. Heiss*, 271 F.3d 891, 897 (9th Cir. 2001); *Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th Cir. 1995) ("An inmate's release from prison while his claims are pending generally will moot any claims for injunctive relief relating to the prison's policies unless the suit has been certified as a class action."). An exception to the mootness doctrine

1    exists if a plaintiff shows there is a "reasonable expectation" or "demonstrated probability" he

2    will return to the prison from which he was transferred. *See Darring v. Kincheloe*, 783 F.2d 874,

3    876 (9th Cir. 1986).

4         When Plaintiff initiated this lawsuit, he was in Mason County custody complaining of

5    conduct occurring during his incarceration at the Jail. *See* Dkt. 16. At this time, Plaintiff has been

6    convicted of first-degree manslaughter and is in the custody of the Washington State Department

7    of Corrections. *See* Dkt. 75. As Plaintiff is now in state custody serving a state sentence, he has

8    not shown a reasonable expectation that he will return to the Jail. Accordingly, the Court

9    recommends Plaintiff's claims for injunctive relief be dismissed as moot.

10        B.  *Deliberate Indifference*

11        Plaintiff alleges Defendants acted with deliberate indifference to his serious medical

12   needs when they denied Plaintiff (1) pain management treatment; (2) proper dental treatment;

13   and (3) proper treatment for his hypothyroidism. Dkt. 16.

14             a.  Legal Standard

15        In order to state a claim for relief under 42 U.S.C. § 1983, a plaintiff must show: (1) she

16   suffered a violation of rights protected by the Constitution or created by federal statute, and (2)

17   the violation was proximately caused by a person acting under color of state law. *See Crumpton

18   v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The first step in a § 1983 claim is therefore to

19   identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271

20   (1994). To satisfy the second prong, a plaintiff must allege facts showing how individually

21   named defendants caused, or personally participated in causing, the harm alleged in the

22   complaint. *See Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). Further, a § 1983 suit cannot

1    be based on vicarious liability alone, but must allege the defendant's own conduct violated the

2    plaintiff's civil rights. *City of Canton v. Harris*, 489 U.S. 378, 385-90 (1989).

3         Plaintiff, a pretrial detainee at all relevant times, alleges he was denied adequate medical

4    treatment. Dkt. 16. A pretrial detainee's right to adequate medical care arises under the due

5    process clause of the Fourteenth Amendment. *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1120

6    (9th Cir. 2018). The elements of such a claim are: (1) "the defendant made an intentional

7    decision with respect to the conditions under which the plaintiff was confined"; (2) "those

8    conditions put the plaintiff at substantial risk of suffering serious harm"; (3) "the defendant did

9    not take reasonable available measures to abate that risk, even though a reasonable official in the

10   circumstances would have appreciated the high degree of risk involved—making the

11   consequences of the defendant's conduct obvious"; and (4) "by not taking such measures, the

12   defendant caused the plaintiff's injuries." *Id.* at 1125.

13        With respect to the third element, "the defendant's conduct must be objectively

14   unreasonable, a test that will necessarily turn on the facts and circumstances of each particular

15   case." *Id.* (omitting internal punctuation and quotation marks). " '[M]ere lack of due care' " is

16   not enough; "the plaintiff must 'prove more than negligence but less than subjective intent –

17   something akin to reckless disregard.' " *Id.* (quoting *Castro*, 833 F.3d at 1071).[3]

18             b.  Pain Management

19        Plaintiff alleges he has complex regional pain syndrome ("CRPS") that is treated by a

20   specialist at Swedish Hospital. Dkt. 16 at 5. He states that, from April 15, 2023 to August 15,

21

22        [3] As this Court has previously stated, a pretrial detainee's right to adequate medical care arises under the
     due process clause of the Fourteenth Amendment. *Gordon*, 888 F.3d at 1120. Nurse Defendants did not cite the
23   applicable Ninth Circuit law and instead rely on inapplicable case law that applies the Eighth Amendment standard
     to Fourteenth Amendment claims. For judicial efficiency, the Court will apply the correct legal standard and not
24   require the motion to be refiled.

2023, Nurse Bree ("Nurse Borden")[4] did not provide him with adequate treatment and Defendants Hanson and Schoeneberg did not provide him with medical care despite responding to his grievances. *Id*. at 7.

The evidence shows Plaintiff was seen and treated on "hundreds of occasions" while housed at the Jail. Dkt. 74, Borden Dec., ¶ 3. Plaintiff was prescribed dozens of medications and given extensive treatment. *Id*. at ¶ 4. Despite the treatment provided, Plaintiff "continued to complain, demanded stronger and stronger medications, repeatedly threatened staff, and promised to sue whenever he was denied his preferred intervention." *Id*. Plaintiff would demand pain medication, but would refuse to have his blood drawn. *Id*. at ¶ 5. "Because comprehensive metabolic panels (CMPs) are essential to ensure proper use of medication, [Nurse Borden and her colleagues] were frequently unable to provide [Plaintiff] with the pain medication he demanded." *Id*. Plaintiff was made aware of this, but still refused the blood draws. *Id*.

Nurse Borden states Plaintiff "frequently engaged in drug-seeking behavior, demanding specific medications and dosages he had not been prescribed in many years." Dkt. 74, Borden Dec., ¶ 6; *see also* Dkt. 74 at 43. Nurse Borden also observed Plaintiff displaying behaviors inconsistent with his pain complaints. Dkt. 74, Borden Dec., ¶ 7. Plaintiff "was frequently seen walking without a limp or any alteration in his gait, going to the law library, and standing for extended periods of time without any outward displays of pain." *Id*. The medical records also reflect Defendant Houlton witnessed Plaintiff engaging in activities inconsistent with his pain complaints. *See* Dkt. 74 at 51-55.

---

[4] Plaintiff incorrectly identified Defendant Nurse Bree in the Amended Complaint. Dkt. 16. Defendant Bree is correctly identified as Briana Borden throughout the remainder of this Report and Recommendation. *See* Dkt. 74, Borden Dec., ¶ 1.

The medical records do not show Plaintiff made many complaints about his chronic pain during the period in question. However, Plaintiff requested duloxetine for his chronic pain. Dkt. 74 at 39. After providers reviewed Plaintiff's kites and grievances, duloxetine was prescribed on May 19, 2023. *Id*. However, on June 1, 2023, Plaintiff had refused duloxetine for three days and it was discontinued. *Id*. at 42.

The evidence shows Plaintiff was seen for different complaints between April 2023 and August 2023. Plaintiff was provided treatment related to his dental needs, thyroid medication, dietary needs, pain medication, and mental health needs. Dkt. 74 at 35-44. Throughout his incarceration at the Jail, Plaintiff refused to comply with the medical providers' requests for blood draws necessary to prescribe him different medications for his pain complaints. Plaintiff was provided with treatment for his medical needs, including pain complaints. However, the record shows Plaintiff disagreed with treatment options and refused to take offered medications. While Plaintiff may have preferred a different type of treatment, Plaintiff has failed to rebut Defendants' summary judgment showing that Defendants' conduct related to Plaintiff's chronic pain treatment did not violate his Fourteenth Amendment rights. *See Gotschall v. Harbaugh-Sheriff*, 2020 WL 6411011, at *8 (D. Mont. Sept. 17, 2020) (finding the plaintiff's disagreement with the defendants' decision not to provide him with specific pain medications did not plausibly support a Fourteenth Amendment claim).

c.    Dental Needs

Plaintiff next alleges Defendants have an extraction-only policy regardless of what a dentist would prescribe. Dkt. 16 at 9. Plaintiff states "medical" refused to schedule a dental visit unless Plaintiff agreed to have his tooth pulled. *Id*. He contends Defendant Schoeneberg directed Defendant Borden to examine Plaintiff's tooth and schedule an appointment with a dentist. *Id*.

1   Defendant Borden would not schedule a visit to see the dentist until Plaintiff agreed to have his

2   tooth extracted. *Id*. Plaintiff states he then removed his own tooth. *Id*. After he was seen by a

3   dentist, he asked Defendant Borden when he would be returning to the dentist and she told him

4   "administration" denied the request. *Id*. at 10.

5          The evidence shows Plaintiff frequently demanded dental treatment. Dkt. 74, Borden

6   Dec., ¶ 8. In January 2023, he requested a dental exam, but the request was denied because he

7   did not have an acute dental issue and was not having difficulty chewing food. Dkt. 74 at 30.

8   Plaintiff was prescribed mouthwash, but failed to comply with Jail rules about spitting the

9   mouthwash out before returning to his cell. *Id*. at 26. In May 2023, Plaintiff again requested

10  outside dental care but stated he did not want to have his tooth removed. *Id*. at 36-37. Defendant

11  Borden did not see any drainage or abscess and there was no obvious facture. *Id.* at 37. She was

12  unable to see that the tooth was loose, but Plaintiff stated that it was. *Id*. She encouraged Plaintiff

13  to attend the dental appointment and have the dentist make a recommendation. *Id*.

14         On June 1, 2023, Plaintiff was permitted to go to an outside dental visit. Dkt. 74, Borden

15  Dec., ¶ 8; *see also* Dkt. 74 at 41. Plaintiff demanded expensive cosmetic procedures instead of

16  the extractions that were offered and became abusive and threatened to sue when he was denied

17  his preferred treatment. Dkt. 74, Borden Dec., ¶ 8. "As a result, the dental clinic to which

18  [Plaintiff] was sent refused to participate in any further treatment." *Id*. Defendant Borden states

19  Plaintiff's teeth were regularly examined. *Id*. at ¶ 9. "[H]e was found to have no swelling,

20  cavities, abscesses, or acute dental issues that prevented proper mastication or adversely affected

21  his health." *Id*. Plaintiff's demands for bridges and other cosmetic procedures were not approved

22  per Healthcare Delivery Services' ("HDS")[5] policy, that requires inmates have access to care that

23

24         [5] HDS provides medical care for the Jail. *See* Dkt. 74, Borden Dec., ¶ 1.

1  is necessary for proper mastication and maintaining health. *Id.* The policy does not include

2  cleanings or restorations. *Id.*

3      The medical records show the Jail does not provide floss, but Plaintiff was provided with

4  toothpaste, a toothbrush, and prescription mouthwash. *See* Dkt. 74 at 25, 42. Plaintiff had a

5  visibly loose front bottom tooth prior to his visit with an outside dentist. *Id.* at 34. When he

6  returned from the dental visit, the x-rays revealed severe bone loss along the lower anterior but

7  Plaintiff did not have any extractions during the appointment. *Id.* at 41. Further, while Plaintiff

8  requested a dental bridge and a cleaning, the outside dental center did not want to provide further

9  treatment and Nurse Borden found Plaintiff had no issues that prevented him from chewing food

10  and his health was not adversely affected by the loose tooth. *Id.* at 41-42.

11      "Dental care is one of the most important medical needs of inmates." *Hunt v. Dental*

12  *Dept.*, 865 F.2d 198, 200 (9th Cir. 1989). Here, the evidence shows Plaintiff received dental care.

13  His teeth were examined and medical providers found no swelling, cavities, abscesses, or acute

14  dental issues that prevented proper chewing or adversely affected Plaintiff's health. While

15  Plaintiff reported difficulty eating, records show he had no issues that prevented him from

16  chewing his food. He was seen by an outside dentist and that dentist refused to provide further

17  care based on Plaintiff's behavior. Plaintiff also failed to comply with Jail rules regarding

18  mouthwash use and, thus, the prescription mouthwash was discontinued. The evidence shows

19  Plaintiff received dental care and his own behavior impacted his ability to receive more care.

20  Based on the records before the Court, there is no evidence Defendant Borden, or any other

21  Defendant, violated Plaintiff's constitutional rights regarding Plaintiff's dental needs. *See Wood*

22  *v. Housewright*, 900 F.2d 1332, 1333–35 (9th Cir. 1990) (medical care that is not "as prompt or

23

24

efficient as a free citizen might hope to receive" but addresses a prisoner's needs does not violate

the constitution).

### d.  Thyroid Treatment

Plaintiff alleges Defendants failed to administer his thyroid medication when Plaintiff

was fasting and, as a result, Plaintiff could not properly absorb his medication. Dkt. 16 at 11,

13.[6]

The evidence reflects Plaintiff was regularly treated for hypothyroidism. Dkt. 74, Borden

Dec., ¶ 10. "TSH is a hormone that acts as a messenger to the thyroid gland" and is checked

using a blood test. *Id*. Because Plaintiff frequently refused to have his blood drawn, "it was often

not possible to check his TSH levels." *Id*. For example, the medical records in December 2022

indicate Plaintiff's TSH level was checked four months prior and was within normal limits. Dkt.

74 at 26. Plaintiff refused a lab draw in December 2022. *Id*. He also refused blood draws in

January 2023. *Id*. at 28.

In May of 2023, when Plaintiff complained that his thyroid medication was not being

properly absorbed, his medications were offered at 6:30 a.m., prior to breakfast. Dkt. 74 at 35-36.

His blood was drawn and his TSH showed improvement; Plaintiff was mildly outside of the

normal range. *Id*. at 36-37. His thyroid medication was increased, with a note to recheck his

levels in two months. *Id*. at 37. The record shows Plaintiff was provided medication for his

thyroid and, when he complained about improper absorption, his medication was provided to

him while fasting. Therefore, the record shows Defendants did not act with reckless disregard for

Plaintiff's thyroid needs. *See Spillard v. Lien*, 2020 WL 7696079, at *10 (N.D. Cal. Dec. 28,

---

[6] In the claim related to his thyroid, Plaintiff also complains about not being given a low fiber diet. Dkt. 16 at 13. The Court finds Plaintiff's complaint related to his diet is not a stand-alone claim, but supporting his allegations that he could not properly absorb his thyroid medication. Further, his request for a different diet is moot based on his transfer to state custody.

2020) (granting summary judgment finding the defendants did not act unreasonably in relying on the plaintiff's blood glucose levels when refusing to change the diet provided, refusing to change the timing of medications, and when determining whether he faced an unreasonable risk).

        e.   Summation

Defendants' evidence shows Plaintiff received medical care for his pain management, dental needs, and hypothyroidism. While Plaintiff raises allegations related to policies that denied him treatment, the record reflects that he was not denied treatment and that Defendants did not act with reckless disregard to his serious medical needs. Furthermore, mere differences of opinion between a prisoner and prison medical staff or between medical professionals regarding the proper course of treatment does not give rise to a § 1983 claim. *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004). Despite Plaintiff's allegations, the record shows Plaintiff often preferred a specific type of treatment (a dental bridge, specific medications) or refused procedures that would allow for proper treatment (refusing blood draws to check CMPs to ensure proper medication use, improper use of mouthwash, or behavior that resulted in an outside dentist refusing to treat Plaintiff). *See* Dkt. 74, Borden Dec., ¶ 9; Dkt. 74 at 31, 41-42. Therefore, at most, this case presents a difference in medical opinion or medical negligence and is not actionable under § 1983. Plaintiff's allegations are not a model of clarity and Plaintiff has provided no evidence to refute Defendants' summary judgment showing. Therefore, for all of the above stated reasons, the Court finds Defendants have sufficiently shown no genuine issue of material fact remains in this case as to Plaintiff's allegations that Defendants violated his Fourteenth Amendment rights and Defendants are entitled to judgment as a matter of law.

    C.  *Mason County*

County Defendants also argue any claims against Mason County should be dismissed. Dkt. 73. A local government unit or municipality can be sued as a "person" under § 1983. *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 691–94 (1978). However, a municipality cannot be held liable under § 1983 solely because it employs a tortfeasor. *Id.* at 691. A plaintiff seeking to impose liability on a municipality under § 1983 must identify a municipal "policy" or "custom" that caused his or her injury. *Bryan County Commissioners v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell* 436 U.S. at 694). A plaintiff must also demonstrate the municipality, through its deliberate conduct, was the "moving force" behind the injury alleged. *Id.* at 404. Liability may also exist where there is a "policy of inaction and such inaction amounts to a failure to protect constitutional rights." *Oviatt v. Pearce*, 954 F.2d 1470 (9th Cir. 1992).

Plaintiff appears to sue Mason County because it is responsible for its employees' alleged constitutional violations and because of Jail policies. First, the Court has found Plaintiff's constitutional rights were not violated. Second, Plaintiff has not specified any policies that caused his injuries or violated his constitutional rights. For example, if the Jail had an extraction-only policy, there is no evidence Plaintiff had a tooth extracted or was denied necessary dental care because of an extraction-only policy. Accordingly, the record reflects no genuine issue of material fact remains as to claims against Mason County and Mason County is entitled to judgment as a matter of law.

D.  *State Constitutional Claims*

In the Amended Complaint, Plaintiff states he is bringing his claims directly under the Washington State Constitution. Dkt. 16. "Washington courts have consistently rejected invitations to establish a cause of action for damages based upon constitutional violations 'without the aid of augmentative legislation[.]" *Blinka v. Washington State Bar Ass'n*, 109 Wash.

App. 575, 591 (Div. I 2001) (quoting *Sys. Amusement Inc. v. State*, 7 Wash. App. 516, 516 (1972)). Plaintiff has not demonstrated that he can bring a private cause of action under the Washington State Constitution because he has not shown "augmentative legislation" allows him to bring suit under the Washington State Constitution here. Therefore, Plaintiff's Washington State Constitution claims should be dismissed.

**IV.    Conclusion**

Viewing the evidence in the light most favorable to Plaintiff, the undersigned finds no genuine issue of material fact remains regarding whether Defendants violated Plaintiff's Fourteenth Amendment rights when providing him medical and dental care. Further, Plaintiff's claims for injunctive relief are moot and he has failed to state a claim under the Washington State Constitution. Accordingly, Defendants are entitled to judgment as a matter of law and the undersigned recommends Defendants' Motions for Summary Judgment (Dkts. 73, 76) be granted and this case be closed.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit not later than **fourteen (14) days** from the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar **fourteen (14) days** from the date they are filed. Responses to objections may be filed by **the day before the noting date**. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **June 23, 2025**.

Dated this 2nd day of June, 2025.

_____
David W. Christel
United States Magistrate Judge